# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BRINK FIDLER and JUSTIN FOX, | )<br>)<br>) |
| Plaintiffs, | )<br>) NO. 3:16-cv-02591 |
| v. | ) CHIEF JUDGE CRENSHAW<br>) |
| THE TWENTIETH JUDICIAL DISTRICT DRUG TASK FORCE, | )<br>)<br>) |
| Defendant. | |

## MEMORANDUM AND ORDER

Brink Fidler and Justin Fox brought this action against their former employer, the Twentieth Judicial District Drug Task Force (the "Task Force"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (Doc. No. 18.) Before the Court is the Task Force's Motion to Dismiss for lack of subject matter jurisdiction. (Doc. No. 24.) For the following reasons, the motion is **DENIED**.

I.  ALLEGATIONS

The Task Force is a local, intergovernmental agency created pursuant to an inter-agency agreement, as authorized by Tennessee Code Annotated § 12-9-104. (Doc. No. 18 at 1.) A board of directors, appointed by local government officials, controlled the Task Force. (Id. at 2.) The District Attorney and the Metropolitan Nashville Police Department (the "Police Department") Chief selected the Director of the Task Force, who was in charge of day-to-day operations. (Id. at 3.) The District Attorney provided legal advice and guidance to the Task Force. (Id.)

When Plaintiffs began working for the Task Force, they continued to receive their salaries from the Metropolitan government. (Id. at 4.) The Task Force maintained a local bank account at

First Tennessee Bank, funded solely by fines and civil forfeitures of drug defendants prosecuted by the Task Force. (Id.) Overtime compensation was to be paid from this First Tennessee Bank account. (Id. at 5.)

In June 2015, the District Attorney closed the Task Force. (Id.) As a result, Fidler left law enforcement, and Fox returned to his role as a patrolman for the Police Department. (Id.) Fox's paid time off transferred with him to the Police Department. (Id. at 6.)

II. STANDARD OF REVIEW

A defendant may assert the affirmative defense of lack of subject matter jurisdiction in a motion to dismiss. FED. R. CIV. P. 12(b)(1). The party opposing dismissal has the burden of proving subject matter jurisdiction. Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). Specifically, the non-moving party must show that the complaint "alleges a claim under federal law, and that the claim is 'substantial.'" Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1248 (6th Cir. 1996) (holding that a complaint is "substantial" unless "prior decisions inescapably render [it] frivolous."). That is to say, the non-moving party will survive the motion to dismiss by showing "any arguable basis in law" for the claims set forth in the complaint. Id. The Court construes "the complaint in a light most favorable to the plaintiff, accept[s] as true all of plaintiff's well-pleaded factual allegations, and determine[s] whether the plaintiff can prove no set of facts supporting [his] claims that would entitle him to relief." Ludwig v. Bd. of Trustees of Ferris St. Univ., 123 F.3d 404, 408 (6th Cir. 1997).

III. ANALYSIS

The Task Force argues that it is entitled to sovereign immunity under the Eleventh Amendment because it was a state entity. (Doc. No. 25 at 3 (citing Alden v. Maine, 527 U.S. 706,

712 (1999))). Plaintiffs do not dispute that state entities are entitled to sovereign immunity, but argue that the Task Force was a local entity. (Doc. No. 27.)

Both parties agree that to determine whether the Task Force was a state entity, the Court must weigh the following four factors: (1) "the State's potential liability for a judgment against the entity"; (2) "the language by which state statutes . . . and state courts . . . refer to the entity and the degree of state control and veto power over the entity's actions"; (3) "whether state or local officials appoint the board members of the entity"; and (4) "whether the entity's functions fall within the traditional purview of state or local government . . . ." Ernst v. Rising, 427 F.3d 351, 359 (6th Cir. 2005).

A. STATE'S POTENTIAL LIABILITY

Taking the allegations in the Complaint as true, the State does not have potential liability for a judgment against the Task Force. Rather, the judgment would be paid from the Task Force's independent bank account. Accord Timberlake by Timberlake v. Benton, 786 F. Supp. 676, 682 (M.D. Tenn. 1992) (finding that the 19th Judicial Task Force is a separate entity from the state). While the Task Force disputes this (Doc. No. 25 at 4), the dispute raises a question of fact not appropriate for the Court to resolve on a motion to dismiss. See Solo v. United Parcel Serv. Co., 819 F.3d 788, 796 (6th Cir. 2016) (holding that it is not appropriate to resolve a factual dispute on a motion to dismiss). As such, at this stage this factor weighs against finding the Task Force is a state entity.

B. LANGUAGE OF STATE STATUTES, STATE COURTS, AND DEGREE OF STATE CONTROL

Plaintiffs allege that the State had no control or veto power over the Task Force. The parties dispute the meaning of the language in the state statutes and courts. (Doc. Nos. 25, 27.) By state law, a Task Force member is a "volunteer of the state" as a defendant in an action against the

member arising from the member's official activities. TENN. CODE ANN. § 8-7-110(c). Here, however, that statute does not apply because the former task force members are the plaintiffs. State law also defines Task Force members as "State employee[s] under this chapter and under title 9, chapter 8 . . . ." TENN. CODE ANN. § 8-42-101(3)(C). However, that chapter, Chapter 42, only covers defending state employees in lawsuits, and title 9 chapter 8 refers to compensation for state employees when their property is damaged or when they obtain a judgment against them in a civil suit. TENN. CODE. ANN. §§ 9-8-111, 9-8-112; Chapter 42 of Title 8 of the TENN. CODE ANN. (titled "Defense of State Employees"). As such, neither party identifies a state statute that refers to the Task Force as either a local or state entity relevant to this FLSA suit.

While the parties cited multiple federal cases within Tennessee referring to different task forces, neither party cited any state court cases referring to the Task Force as either a local or state entity. Because Plaintiffs allege that the State did not control or have veto power over the Task Force, and state law is silent on this issue, this factor weighs against finding that the Task Force was a state entity.

C. REMAINING FACTORS

Both of the remaining factors weigh in favor of finding that the Task Force was a local entity. The Complaint alleges that local officials, not state officials, appointed the Task Force's board members. Further, at common law, law enforcement duties are generally local functions, not state functions.[1] See Crabbs v. Scott, 786 F.3d 426, 429 (6th Cir. 2015) (finding that a sheriff's law enforcement duties are local duties functions rather than functions of the state) (citing 70 Am.

---

[1] Crabbs held that a "sheriff's law enforcement duties at common law represented local functions." Crabbs, 786 F.3d at 429. However, it noted that "law-enforcement officers sometimes wear multiple hats, acting on behalf of the county *and* the state." Id. (emphasis in original). As such, the immunity question "hinges on whether the officer represents the State in the 'particular area' or on the 'particular issue' in question" Id. (quoting McMillian v. Monroe Cty., 520 U.S. 781, 785 (1997)). This opinion should not be read broadly that law enforcement duties are local functions in every case, but the Court does not have enough information in this case to make a more individualized determination.

4

Jur. 2d, Sheriffs, Police, & Constables § 2). As such, these factors weigh against finding that the Task Force was a state entity.

IV. CONCLUSION

For the foregoing reasons, all four factors weigh in favor of finding that the Task Force was a local entity. As such, the Task Force's Motion to Dismiss (Doc. No. 24) is **DENIED**.

Within seven days of the date of this Order, the parties are **ORDERED** to file a joint motion to reset the initial case management conference with the Magistrate Judge.

Within fourteen days of the date of this Order, the Task Force is **ORDERED** to file an Answer or other responsive pleading. FED. R. CIV. P. 12(a)(4)(A).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE