# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **BRINK FIDLER and JUSTIN FOX,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:16-cv-2591 |
| ) | **CHIEF JUDGE CRENSHAW** |
| **THE TWENTIETH JUDICIAL** ) | |
| **DISTRICT DRUG TASK FORCE,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Brink Fidler and Justin Fox accrued hundreds of hours of compensatory time working for the Twentieth Judicial District Drug Task Force (the "Task Force"), but when the Task Force dissolved, it refused to pay for the accrued compensatory time. Fidler and Fox brought this action to obtain compensation for their accrued compensatory time, pursuant to the Fair Labor and Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (Doc. No. 18.) Before the Court is the Task Force's Motion for Summary Judgment against Fidler, arguing he was an exempt employee. (Doc. Nos. 40, 53.) Also before the Court is Fidler's and Fox's Motion for Summary Judgment, seeking compensatory and liquidated damages. (Doc. No. 44.) For the following reasons, Fox's Motion is granted in part and denied in part, while the remaining motions are denied.

I. Undisputed Material Facts

The Task Force was an inter-agency organization between the Metropolitan Nashville Police Department (the "Police Department") and the Office of the Twentieth Judicial District Attorney. (Doc. No. 58-1.) Its purpose was to find and arrest those responsible for the sale of large quantities of controlled substances in the Twentieth Judicial District, which serves Davidson

County, Tennessee. (Doc. No. 58-1 at 1). The Board of Directors (the "Board") controlled the Task Force, and consisted of the Chief of Police of the Metropolitan Nashville Police Department (the "Chief"); District Attorney of the Twentieth Judicial District (the "District Attorney"); and the Director of the Task Force (the "Director"). (Doc. No. 58-1 at 2.) The Chief and the District Attorney selected the Director. (Doc. No. 58-1 at 3.) The Board was also in charge of the Task Force's finances, including the hiring and firing of its employees and setting their salaries. (Doc. No. 61-3 at 6.)

Over the relevant time period, Fidler served as the Director with an annual salary of $93,419.00. (Doc. No. 58-1 at 5-6.) Prior to becoming the Director, Fidler was a Sergeant with the Police Department, and his job duties did not change with the change of titles. (Doc. No. 58-1 at 5; Doc. No. 56-5 at 16.) Fidler was in charge of the day-to-day operations of the Task Force and the general direction of investigations. (Doc. No. 59-1 at 10; Doc. No. 56-1 at 6; Doc. No. 56-5 at 15-16.) Fidler also worked in the field alongside other agents, assisting with arrests and writing field reports, among other field tasks, although it is disputed if he was required to do so or if that was his primary job duty. (Doc. No. 59-1 at 7-8.) When Fidler worked over forty-three hours in a week, he accrued compensatory time. (Doc. No. 58-1 at 6.) Fidler resigned form the Task Force effective June 30, 2015. (Doc. No. 58-1 at 5.)

For the relevant time period, Fox served as a "Task Force Officer" and "Detective." (Doc. No. 59-1 at 2.) His job duties included "conducting investigations of high level narcotics trafficking organizations, which entailed investigating drug complaints, conducting surveillance, executing search warrants, working wire-tap investigations, making arrests, seizure of property, conducting interviews, responding to calls for back-up, and preparing reports." (Doc. No. 59-1 at

2

4.) Fox did not manage or supervise other employees. (Doc. No. 59-1 at 4.) Fox was terminated from the Task Force on June 30, 2015. (Doc. No. 59-1 at 2.)

On July 1, 2015, the Board held a meeting. (Doc. No. 58-1 at 6.) In advance of the meeting, Fidler prepared the minutes, which stated that the Board "discussed and approved the payout of accumulated comp time to Justin Fox and Brink Fidler." (Doc. No. 58-1 at 6.) The minutes also reflected that the Task Force would pay Fox $17,362.56 for his 480 hours of accrued compensatory time at an hourly rate of $36.172, (Doc. No. 58-1 at 6), and would pay Fidler for 351 hours of accrued compensatory time at an hourly rate of $44.913, which totals $15,764.46. (Doc. No. 58-1 at 6.) The District Attorney, who was then Glen Funk, and Chief did not sign the board minutes. (Doc. No. 58-1 at 8.)

After the board meeting, Funk asked Michael Brook, the Director of Finance Operations for the District Attorney, to investigate whether Fidler was entitled to a payout of his accrued compensatory time. (Doc. No. 58-1 at 7-8.) Brook emailed Tara Stewart, Metro's Human Resources employee assigned to the District Attorney's office, and inquired whether Fidler was entitled to payout of his accrued compensatory time. (Doc. No. 58-1 at 9.) Stewart stated that he was not eligible for compensatory time. (Doc. No. 58-1 at 9.) Fidler also asked Michael Taylor, Stewart's supervisor, to investigate the issue, and he agreed. (Doc. No. 58-1 at 10.) Brook informed the District Attorney and Chief that Fidler was exempt under the FLSA and recommended that the Board not approve payment of compensatory time. (Doc. No. 58-1 at 11-12.)

II. Analysis

Fidler moves for summary judgment because, he argues, the FLSA requires the Task Force to pay accrued compensatory time even if he is an exempt employee, and alternatively, that he is not an exempt employee. Fox moves for summary judgment for his accrued compensatory time,

3

which is unopposed subject to any statute of limitations defenses. Both Fidler and Fox also move for summary judgment on their liquidated damages claim. The Task Force moves for summary judgment against Fidler because he is an exempt employee, and against Fidler and Fox on any damages accruing over two years ago as time-barred.

Courts grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To grant summary judgment, courts must view the "facts and reasonable inferences in the light most favorable to the nonmoving party." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing FED. R. CIV. P. 56(a)). This burden is not decreased solely because both parties filed cross-motions for summary judgment. On cross-motions for summary judgments, courts may rule that "neither party met its burden of demonstrating that no genuine issue of material fact existed when all inferences were drawn, in turn, for the nonmoving party, such that it would be proper for the case to go to trial." B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001).

A. Fidler

Fidler argues that regardless of whether he is an exempt employee, he is entitled to a pay-out of his accrued compensatory time under 29 C.F.R. § 553.27. The FLSA permits public agencies to give their employees compensatory time off "at a rate no less than one and one-half hours for each hour of employment for which overtime compensation is required" by the FLSA. 29 U.S.C. § 207(o)(1). Upon termination of employment, compensatory time "shall" be paid not less than "(A) the average regular rate received by such employee during the last 3 years of the employee's employment, or (B) the final regular rate received by such employee." Id. at (4).

4

Fidler relies on the word "shall," which is reiterated in 29 C.F.R. § 553.27(b), to argue that payment of accrued compensatory time is required. However, "shall" only describes the rate to be paid, not whether the employee is entitled to payment. Instead, an "employer may provide an exempt employee with additional compensation without losing the exemption." 29 C.F.R. § 541.604(a) (effective on June 30, 2014). "Such additional compensation . . . may include paid time off." Id. "Compensatory time off," which is an interchangeable term with "compensatory time," is "paid time off the job which is earned and accrued by an employee in lieu of immediate cash payment for employment in excess of the statutory hours for which overtime compensation is required by section 7 of the FLSA." 29 C.F.R. § 553.22. In other words, an employer may give an exempt employee paid time off, including compensatory time, and that exempt employee does not lose his or her exempt status. If Fidler is an exempt employee, the fact that he accrued compensatory time would not necessarily make him entitled to compensation for that time.

Whether Fidler is an exempt employee turns on disputed facts to be determined at trial. An exempt employee, to which the provisions under 29 U.S.C. § 207 do not apply, is "any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). The Task Force argues that Fidler qualifies for either the executive or administrative exemption.

An employee in a "bona fide executive capacity" is one who (1) is compensated at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given

5

Case 3:16-cv-02591   Document 65   Filed 05/14/18   Page 5 of 11 PageID #: 1232

particular weight. 29 U.S.C. § 541.100(a) (effective June 30, 2014). An "employee employed in a bono fide administrative capacity" is one who is (1) compensated at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a) (effective June 30, 2014). Because it is disputed what is Fidler's primary duty, making that issue dispositive of the Motions, the Court will only address those elements.

An employee's "primary duty" is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The "first responder" regulation, 29 C.F.R. § 541.3, "does not supplant the primary duty test in determining whether a particular first responder is exempt." Morrison v. Cty. of Fairfax, VA, 826 F.3d 758, 767 (4th Cir. 2016). Thus, high-level employees who perform some first responder duties, like police lieutenants or fire chiefs, can nonetheless be exempt executives if their primary duty is managerial and they meet the other elements of the test." Maestas v. Day & Zimmerman, LLC, 664 F.3d 822, 827 (10th Cir. 2012).

The first responder regulation states that the exemptions in 29 U.S.C. § 213 do not apply to "police officers, detectives, . . . and similar employees, regardless of rank or pay level, who perform work such as . . . preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work." 29 C.F.R. § 541.3(b)(1). These employees' "primary duty is not

management of the enterprise in which the employee is employed," and merely because a police officer may "also direct[ ] the work of other employees in the conduct of an investigation" does not make the officer's primary duty executive. Id. at (b)(2).

The first responder regulation therefore requires a factfinder to determine whether the police officer's primary duty is in law enforcement or if it is performing executive or administrative duties. The Second Circuit has held that police officers that "spend the majority of their time performing non-exempt work in the field . . . leads to the conclusion that [their] primary duty is not management but field law enforcement." Mullins v. City of New York, 653 F.3d 104, 118 (2d Cir. 2011). In Mullins, a group of 4,000 sergeants in the New York Police Department sued for overtime pay. Id. at 106. Like Fidler, the sergeants performed both managerial and law enforcement work, although it was undisputed that the sergeants spent most of their time in the field. Id. at 107-09. The Second Circuit noted that "courts have found high-level police and fire officials to be exempt executive or administrative employees only if, in addition to satisfying the other pertinent requirements, . . . their primary duty is performing managerial facts such as . . . directing operations at crime, fire or accident scenes, including whether additional personnel or equipment is needed." Id. at 115 (quoting 69 Fed. Reg. at 22130). Ultimately, because the sergeants performed a majority of their time on the non-exempt law enforcement duties, the court directed judgment for the police officers. Id. at 121.

Here, it is undisputed that Fidler maintained essentially the duties he had as a lieutenant with the Police Department. See Maestas, 664 F.3d at 829-30 (finding summary judgment improper for a filed lieutenant and police captain who performed a mix of administrative duties and first responder duties, but granting summary judgment against a police major who spent almost his entire day at headquarters supervising the shift). And while the Statement of Undisputed Facts

7

shows that Fidler performed first responder, administrative, and executive responsibilities, and the parties dispute which was his "primary duty." Like in Maestas, this is a disputed question of fact to be resolved at trial, precluding summary judgment to either party on whether Fidler qualifies for the executive or administrative exemptions.

B. Statute of Limitations

The Task Force argues that the two-year statute of limitations precludes any award of damages for compensatory time accrued prior to September 27, 2014. (Doc. No. 54 at 17.) Assuming without deciding that any violation of the FLSA was not willful, the aggrieved party must bring an action within two years of the date the "cause of action accrued." 29 U.S.C. § 255(a). But when a public agency is the employer and that agency elects to give the employee compensatory time instead of overtime pay, the pay-out for the accrued compensatory time is not due until the employee's termination from the public agency. 29 U.S.C. § 207(o)(4). Therefore, this action did not accrue until either June 30, 2015. See Archer v. Sullivan Cty., Tenn., 129 F.3d 1263, at *2 (6th Cir. 1997) (table) (holding that the statute of limitations for employees receiving compensatory time did not begin running until the county gave notice that the employees could no longer use their compensatory time). Fox's and Fidler's claims are not time-barred.

C. Fox

The Task Force did not respond to Fox's Motion for Summary Judgment on his compensatory damages claim, so that portion of the Motion is unopposed. M.D. Tenn. L.R. 7.01(b) (failure to respond to a motion indicates a lack of opposition to that motion); (see Doc. No. 59-1 at 1-9 (not opposing material facts related to Fox's compensatory damages claim)). Fox claims he accrued 486.75 hours of compensatory time (Doc. No. 59-1 at 33), and it is undisputed that his final rate of pay was $36.172 per hour (Doc. No. 59-1 at 9). The Task Force objects to Fox's time

8

logs because they are inadmissible hearsay. (Doc. No. 59-1 at 33.) However, the time sheets are admissible a statement by a party opponent because they were kept by Marlene Petty, Fox's secretary and Task Force employee, and they are offered against the Task Force. Stalbozsky v. Belew, 205 F.3d 890, 894 (6th Cir. 2000) (citing Fed. R. Evid. 801(d)(2)). Additionally, Fox authenticated the time sheets by testifying in his deposition that he printed them off of the Task Force's intranet. (Doc. No. 47-1 at 17-18); FED. R. EVID. 901(b)(1). Because the maximum amount of compensatory time Fox can accrue is 480 hours, 29 U.S.C. § 207(o)(3)(A), there is no dispute that Fox is entitled to $17,362.56 for his 480 hours of compensatory time at $36.172 per hour. 29 U.S.C. § 207(o)(4)(B).

The parties dispute whether Fox is entitled to liquidated damages.[1] Fox moved for summary judgment on liquidated damages and the Task Force did not, so the Court only considers whether the undisputed facts show that Fox is entitled to liquidated damages. Generally, an employer who is violates § 207 shall be liable for unpaid compensation "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are "compensation, not a penalty or punishment." Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d 832, 840 (6th Cir. 2002) (quoting McClanahan v. Mathews, 440 F.2d 320, 322 (6th Cir. 1971)). However, the Court has discretion not to award liquidated damages if it believes that the employer's violation "was in good faith" and the employer had "reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. This burden on the employer is "substantial," and if the employer "fails to carry it, the court may not limit or deny liquidated damages." Martin v. Indiana Michigan Power Co., 381 F.3d 574, 584 (6th Cir. 2004) (citing Elwell, 276 F.3d at 840).

---

[1] Because the there is a disputed fact as to whether Fidler is entitled to pay-out on his compensatory time and the Task Force does not move for summary judgment on the liquidated damages claim, the Court will not address Fidler's liquidated damage claim at this time.

9

Fox argues that the Task Force did not plead the affirmative defense of good faith, so it is waived. Generally, the defendant must "affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(c)(1). However, nothing in the wording of § 260 requires a defendant to plead good faith in order to meet its burden of reasonableness and good faith. See Statham v. United States, No. 00-669C, 2002 WL 31292278, at *10 (Fed. Cl. Sept. 11, 2002) (holding that a defendant is not required to plead good faith under § 260 as an affirmative defense); Anderson v. Theriault Tree Harvesting, Inc., No. 08-330-B-W, 2010 WL 323530, at *16 (D. Me. Jan. 20, 2010) (same in Magistrate Judge's Report and Recommendation); compare 29 U.S.C. § 260 (stating that the court has discretion not to award liquidated damages "if the employer shows" reasonableness and good faith) with 29 U.S.C. § 259 (requiring the employer to "plead[ ] and prove[ ] that" it acted in good faith in conformity with a Department of Labor ruling to avoid liability). Further, the Task Force denied the allegation that its "failure and refusal to pay compensate [sic] Plaintiffs was willful and not in good faith." (Doc. No. 31 at 7.) Therefore, while the Task Force was not required to affirmatively plead good faith, Fox was on notice that the Task Force was contesting any liquidated damages award.

There is very little evidence in the record about whether the Task Force's violation was willful. Brooks emailed Stewart about whether Fox was entitled to compensatory time, to which she responded that he was exempt. (Doc. No. 56-2 at 3.) However, the fact that the Task Force does not even defend its denial of compensatory time to Fox militates against the a finding that its decision was "reasonable." Ultimately, this is a question of fact to be determined at the bench trial, and so the Court denies summary judgment on liquidated damages.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE